UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                 )
ROSEINIA GARMANY,                )
                                 )
       Plaintiff,                )
                                 )
       v.                        )    Civil Action No. 10-1039 (RWR)
                                 )
DISTRICT OF COLUMBIA,            )
                                 )
       Defendant.                )
_____)
```

MEMORANDUM OPINION

Plaintiff Roseinia Garmany brings this action on behalf of her son D.G. against the District of Columbia (the "District") under the Individuals with Disabilities in Education Act, as amended by the Individuals with Disabilities in Education Improvement Act (collectively, "IDEA"), 20 U.S.C. § 1400 et seq. The parties have cross-moved for summary judgment, disputing whether the hearing officer erred in dismissing Garmany's due process complaint. Because Garmany has not satisfied her burden of showing that the hearing officer erred, summary judgment will be granted in favor of the District.

BACKGROUND

During the 2009 to 2010 school year, D.G. was a student at Lincoln Middle School ("Lincoln") in Washington D.C. Administrative Record ("AR") at 303. A January 3, 2010 psychological evaluation classified D.G. as a learning disabled

- 2 -

student and stated that "frequent suspensions are not the remedy
for [D.G.'s] behaviorial problems[.]"  Id. at 313-14.  On
January 11, 2010, the District of Columbia Public Schools
("DCPS") convened a multi-disciplinary team ("MDT") meeting,
attended by Garmany and D.G., to review D.G.'s 2009
individualized education program ("IEP") and draft a new IEP
("January IEP").  Id. at 334-37, 362-400.[1]  In conjunction with
the January IEP, the MDT developed a behavioral improvement plan
("BIP") which includes a scheme of rewards and consequences for
D.G.'s behavior in school.  Id. at 335-36, 405-06.  At the end of
the school day on January 29, 2010, D.G. had a dispute with
another student during which he accidentally struck his teacher.
Id. at 920, 1067-68.  Lincoln dismissed D.G. from school, id. at
920, 1068, and according to Garmany, imposed on D.G. a three-day
suspension which D.G. served in an in-school suspension ("ISS")
on February 1 and 2, and an out-of-school suspension on February
3.  Id. at 937.  D.G. got in a fight on February 4 and spent the
rest of that school day in an in-school suspension.  Id. at 921,

_____

[1] Although the version of the January IEP contained on pages
362 to 400 of the administrative record reflects that it is a
draft, the defendants cite to the document as the January IEP and
the plaintiffs do not dispute this issue.  See Def.'s Stmt. of
Material Facts ¶¶ 11, 12; Pl.'s Resp. to the Def.'s Stmt. of
Material Facts ¶ 3.  The administrative record table of contents
states that the January IEP is included at pages 945 to 1031, but
that portion of the record includes a document called the Final
Eligibility Determination Report which appears to summarize the
psychological report used in preparation for the January IEP.

- 3 -

938.  On February 5, 2010,[2] Garmany filed an administrative due
process complaint alleging that by imposing these suspensions,
DCPS failed to implement D.G.'s January IEP.  Garmany's complaint
also asserted that Lincoln was an inappropriate placement for
D.G. and could not provide for D.G.'s educational needs.  Id. at
939-40.  D.G.'s new IEP ("February EIP") was finalized on
February 19, 2010 and DCPS issued a placement notice for D.G. to
attend Hamilton Academy ("Hamilton").  Id. at 1147-48, 1158-59.

     In March 2010, the hearing officer held a hearing and issued
a determination and order dismissing Garmany's due process
complaint.  Id. at 917-30.  Ruling on the issue of the propriety
of Lincoln's actions on January 29 and February 4, the hearing
officer found that D.G.'s January 29 dismissal was not a
suspension, and that D.G. was in school attending classes in the
ISS room on February 4, 2010.  Id. at 924.  The hearing officer
stated that D.G.'s day in the ISS room on February 4 was not a
suspension in violation of the January IEP because D.G. received
services in school and the MDT had discussed using the ISS room
after D.G.'s behavioral infractions when preparing the January
IEP.  Id. at 925.  In addition, the hearing officer concluded
that the February 3 out-of-school suspension was not a "material

_____

     [2] It is undisputed that although the due process complaint
is dated January 4, 2010, it was filed on February 5, 2010.
Def.'s Stmt. of Material Facts ¶ 36 n.2 (citing AR at 942, 944);
Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 22.

- 4 -

failure" to implement the January IEP.  Id.  The hearing officer

also found that Hamilton was an appropriate placement for

implementing D.G.'s February IEP because "it provides the small

class structure and the intensive behavioral support services

that [D.G.] needs . . ., and the program is reasonably designed

to confer educational benefit to [D.G.]."  Id. at 929.

The plaintiffs move for summary judgment seeking reversal of

the hearing officer's determination ("HOD") arguing that DCPS

failed to implement D.G.'s January IEP and Hamilton is an

inappropriate placement for implementing D.G.'s February IEP.  In

particular, Garmany asserts that the January IEP and BIP

prohibited in-school and out-of-school suspensions and DCPS did

not use the measures outlined in the BIP for D.G.'s misbehavior.

Pl.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. ("Pl.'s

Summ. J. Mem.") at 12-13; Pl.'s Opp'n to Def.'s Cross-Mot. for

Summ. J. and Reply to the Def.'s Opp'n to Pl.'s Mot. for Summ. J.

("Pl.'s Opp'n") at 6-7.[3]  Garmany also argues that the hearing

officer erred in finding that Hamilton was an appropriate

_____

[3] In addition, Garmany argues that DCPS did not fulfill its
obligation to provide services to allow D.G. to continue his
educational progress during the purported suspensions.  Pl.'s
Summ. J. Mem. at 13-14; Pl.'s Opp'n at 7.  However, the record
reflects that Garmany did not raise this argument in the
administrative due process complaint and the HOD does not reflect
that this issue was litigated at the due process hearing.  See AR
at 919, 934-44.  Therefore, this argument may not be raised for
the first time here.  See Shaw v. District of Columbia, 238 F.
Supp. 2d 127, 140 (D.D.C. 2002).

placement because Garmany was not sufficiently involved in the placement decision process and because Garmany's testimony at the administrative hearing reflected that Hamilton could not implement D.G.'s February IEP.  Pl.'s Summ. J. Mem. at 14-17.

The District cross-moves for summary judgment arguing that the January IEP and the BIP did not prohibit suspensions as a punishment for D.G. and, even if they did, that DCPS did not suspend D.G.  Def.'s Mem. in Supp. of Def.'s Cross-Mot. for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J. at 12-17.  The District also argues that even if D.G. was suspended for one day, that suspension did not deny D.G. a free and appropriate education ("FAPE").  Id. at 17-18.  In addition, the District asserts that Hamilton was an appropriate placement for D.G. and that any procedural violation concerning Garmany's participation in the placement decision may not be raised for the first time in reviewing the HOD.  Id. at 18-21.

## DISCUSSION

The IDEA provides that any party aggrieved by an administrative due process HOD has the right to bring a civil action in any district court within 90 days of the hearing officer's decision.  20 U.S.C. § 1415(i)(2)(A)-(B).  The district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of

- 6 -

the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).

The parties have cross-moved for summary judgment under Rule 56(a) which provides for entry of summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 requires the entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" J.J. v. District of Columbia, 768 F. Supp. 2d 214, 217 (D.D.C. 2011) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "In an action challenging a hearing officer's decision under the IDEA where both parties move for summary judgment, the motions are treated as motions for judgment based on the evidence in the record if neither party introduces additional evidence." Id. (citing Stanton ex rel. K.T. v. District of Columbia, 680 F. Supp. 2d 201, 205 (D.D.C. 2010)).  Courts have recognized that "HODs are reviewed under a 'non-deferential standard,' . . . but the challenging party 'must at least take on the burden of persuading the court that the hearing officer was wrong.'" Cousins v. District of Columbia, 880 F. Supp. 2d 142, 147 (D.D.C. 2012) (quoting Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521-22 (D.C. Cir. 2005)).  "However, a court shall not

'substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s].'" Id. (alterations in original) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).

In this case, the central issues are whether the hearing officer erred in finding that Garmany did not meet her burden to show 1) that D.G.'s suspension constituted a failure to implement D.G.'s January IEP; and 2) that Hamilton was an inappropriate placement for implementing D.G.'s February IEP.

I.   FAILURE TO IMPLEMENT JANUARY IEP

Garmany challenges the hearing officer's decision that Garmany did not show that DCPS failed to implement D.G.'s January IEP.  Pl.'s Summ. J. Mem. at 12.  "Although the D.C. Circuit has not yet squarely addressed the question of what standard governs failure-to-implement claims under the IDEA, the consensus approach to this question among the federal courts that have addressed it has been to adopt the standard articulated by the Fifth Circuit in Houston Independent School District v. Bobby R., 200 F.3d 341, 349 (5th Cir. 2000)."  Wilson v. District of Columbia, 770 F. Supp. 2d 270, 274 (D.D.C. 2011) (footnote omitted).[4]  In Bobby R., the Fifth Circuit stated:

---

[4] "The D.C. Circuit has noted that, because the IDEA defines 'free appropriate public education' to mean special educational services that are, inter alia, 'provided in conformity with' a student's IEP, 20 U.S.C. § 1401(9)(D), a 'complete failure' to implement a student's IEP is 'undoubtedly' a denial of an

- 8 -

> [A] party challenging the implementation of an IEP must
> show more than a *de minimis* failure to implement all
> elements of that IEP, and, instead, must demonstrate
> that the school board or other authorities failed to
> implement substantial or significant provisions of the
> IEP.  This approach affords local agencies some
> flexibility in implementing IEP's, but it still holds
> those agencies accountable for material failures and
> for providing the disabled child a meaningful
> educational benefit.

Bobby R., 200 F.3d at 349.  The analysis must consider "whether

the aspects of the IEP that were not followed were 'substantial

or significant,' or, in other words, whether the deviations from

the IEP's stated requirements were 'material.'"  Catalan ex rel.

E.C. v. District of Columbia, 478 F. Supp. 2d 73, 75 (D.D.C.

2007) (quoting Bobby R., 200 F.3d at 349).

> [T]he materiality standard *does not require that the child
> suffer demonstrable educational harm* in order to prevail on
> a failure-to-implement claim.  . . .   Rather, courts
> applying the materiality standard have focused on the
> proportion of services mandated to those actually provided,
> and the goal and import (as articulated in the IEP) of the
> specific service that was withheld.

Wilson, 770 F. Supp. 2d at 275 (internal citation and quotation

marks omitted).

At the administrative hearing, the plaintiff claimed that

DCPS failed to implement D.G.'s January IEP because suspending

D.G. violated the IEP.  The hearing officer found that the text

---

appropriate education under the IDEA."  Wilson, 770 F. Supp. 2d
at 274 n.1 (quoting Abney ex rel. Kantor v. District of Columbia,
849 F.2d 1491, 1496 n.3 (D.C. Cir. 1988)).

- 9 -

of the January psychological evaluation[5] disparaging frequent
suspensions prohibited out-of-school suspensions, but that it did
not address the distinction between in-school and out-of-school
suspensions and that the in-school suspension in this case was
not prohibited.  AR at 925.  The hearing officer relied in part
on testimony that the team that prepared the January IEP and BIP
discussed the ISS room as a place for D.G. to re-focus after he
misbehaved.  Id. at 920; see id. at 1539-40 (reflecting the
testimony of Resheeda Hinkson, the Special Education Coordinator
at Lincoln, who said that the MDT agreed at the January MDT
meeting to allow the use of the ISS room pending the development
of D.G.'s February IEP).  The hearing officer found that Garmany
did not establish that D.G. was suspended on January 29, 2010,
and found that D.G. "was in school, attending classes in the ISS
room" on February 4, 2010.  Id. at 924.  The hearing officer
stated that under the comments to federal regulations governing
the Department of Education's discipline procedures for students
with disabilities, ISS is not a suspension where the student
continues to receive the services required by the student's IEP.
Id. at 925.  The HOD concluded that D.G.'s time in the ISS room
on Febrary 4 was not a suspension because D.G. received services

_____

[5] The hearing officer referred to it as the January "IEP."
AR at 925.

- 10 -

in school and the participants in the January MDT meeting
discussed using the ISS room when D.G. misbehaved.  <u>Id.</u>

Garmany argues that the hearing officer erred by not
addressing the issue of whether DCPS failed to implement D.G.'s
IEP by not imposing on D.G. the consequences specified in the
BIP.  Pl.'s Summ. J. Mem. at 12-13.  Garmany further argues that
suspensions were purposefully omitted in the BIP's listed
punishments and sending D.G. to the ISS room violated the IEP.
The BIP provided that when D.G. misbehaved, D.G. would have to
"participate in the extended learning day program in his resource
room[,]" do "research on his infraction" and provide "a written
explanation of why [he] committed this infraction and why
restitution is important."  AR at 406.  In addition, D.G. would
have to "call his mother at the moment of the infraction to
explain why this infraction occurred and why he was now engaged
in restitution."  <u>Id.</u>  Garmany alleges that instead of following
the BIP, DCPS violated the IEP when it suspended D.G. by placing
him in the ISS room.

Garmany relies on the testimony of Hinkson who stated that
"suspension was not an option" at the January MDT meeting to
prepare the January IEP and BIP.  <u>See</u> <u>id.</u> at 1559-60.  However,
Hinkson also testified that she was referring only to out of
school suspension.  <u>See</u> <u>id.</u> at 1565.  Besides this testimony,
Garmany simply asserts that the omission of suspensions in the

BIP means that all suspensions were prohibited by the IEP and the school could impose only the listed punishments.  Pl.'s Opp'n at 6-7.  This assertion, without further support in the record, does not carry the burden to show that the hearing officer erred in finding that the in-school suspension did not violate the January IEP and that the one-day out-of-school suspension was not a material violation.  In particular, Garmany has not addressed how the ISS in this case undermined the goals and import of the January IEP or shown that the January IEP precluded any punishment options other than the BIP's listed consequences.  This is especially true since the team preparing the January IEP specifically contemplated the use of the ISS room as a destination for D.G. when he misbehaved.  See AR at 920, 925, 1540-41.  Because the plaintiff has not carried her burden to establish from the administrative record that the hearing officer erred in finding no failure to implement the January IEP, the District will be granted summary judgment on this ground.

II.  APPROPRIATE PLACEMENT

Garmany challenges the hearing officer's decision that Hamilton was an appropriate placement for implementing D.G.'s February IEP, arguing that DCPS did not allow sufficient parental participation in the placement decision and that Garmany testified that she objected to the Hamilton placement.  Pl.'s Summ. J. Mem. at 14-17; Pl.'s Opp'n at 8-10.  "The IDEA's

- 12 -

procedural safeguards help ensure that parents are able to
participate fully in decisions affecting their child's
education." J.N. v. District of Columbia, 677 F. Supp. 2d 314,
320 (D.D.C. 2010); see also Long v. District of Columbia, 780 F.
Supp. 2d 49, 59 (D.D.C. 2011) ("The parent must have a full,
meaningful opportunity to participate in the placement
decision.").  "The question of whether a public school placement
is appropriate rests on '(1) whether DCPS has complied with
IDEA's administrative procedures and (2) whether or not the IEP
. . . was reasonably calculated to provide some educational
benefit to [the student.]'" J.N., 677 F. Supp. 2d at 322
(alterations in original) (quoting Schoenbach v. District of
Columbia, 309 F. Supp. 2d 71, 78 (D.D.C. 2004)).  Where the
plaintiff fails to raise a procedural claim that she was denied
an opportunity to participate in the placement decision at the
administrative level, the plaintiff may not later raise it before
a district court.  Long, 780 F. Supp. 2d at 59.

     Here, after DCPS issued its February 19, 2010 notice that
D.G. would be placed at Hamilton, the placement issue before the
hearing officer was modified to "whether DCPS failed to provide
[D.G.] with an appropriate location for the provision of services
specified in [D.G.'s] 02/19/10 IEP." See AR at 918.  The HOD
does not reflect any dispute about Garmany's parental
participation in the placement decision.  See id. at 926-30.

- 13 -

Garmany does not assert that she raised this issue before the hearing officer at any point.  Garmany may not raise this argument in this court since she did not raise it before the hearing officer.  See Long, 780 F. Supp. 2d at 59.

Garmany also argues that the hearing officer erred in finding that DCPS offered an appropriate placement.[6]  The issue at the administrative hearing was the location of the services, not the Hamilton placement.  Nonetheless, the hearing officer considered the record, including Garmany's testimony and the testimony of Dr. Deborah Mosley, Hamilton's Special Education Coordinator, and found that Hamilton was an appropriate placement because Hamilton could implement D.G.'s February IEP.  AR at 927; see id. at 1398-99, 1494, 1496.  In addition, the HOD discusses the individual components of D.G.'s February IEP and states that Hamilton would be able to implement the February IEP's requirements.  Id. at 927.

---

[6] In the HOD, the hearing officer discussed the difference between the terms "placement" and "location" and stated that Garmany did not contest that Hamilton could provide the type of services required by the IEP.  AR at 926 ("While 'placement' is the points along the continuum of placement options available for a child with a disability, 'location' is the physical surrounding, such as the classroom, in which a child with a disability receives special education and related services.").  DCPS is required to offer the student "placement in a school that can fulfill the requirements set forth in the IEP."  O.O. ex rel. Pabo v. District of Columbia, 573 F. Supp. 2d 41, 53 (D.D.C. 2008).

- 14 -

Here, Garmany proffers as evidence that the hearing officer
erred simply her own testimony at the administrative hearing that
Hamilton was an inappropriate placement based on her visit to the
school.  See Pl.'s Opp'n at 10.  However, while Garmany voiced
specific concerns about the Hamilton placement, she admitted that
Hamilton could implement the IEP.  See AR at 1359, 1362-69, 1398-
99.  Moreover, the hearing officer did not rely only on Garmany's
admission that Hamilton could implement the February IEP.  The
hearing officer also cited Dr. Mosley's testimony and evaluated
Hamilton's ability to implement the specialized instruction and
behavioral support service components of D.G.'s IEP based on the
record.  See AR at 927.  Garmany has not shown that the hearing
officer was incorrect in finding, despite Garmany's testimony,
that Hamilton was an appropriate placement to provide D.G. the
services required by the February IEP.  Thus, Garmany has not
satisfied the "'the burden of persuading the court that the
hearing officer was wrong[,]'" Cousins, 880 F. Supp. 2d at 147
(quoting Reid, 401 F.3d at 521), and on appeal this court should
not "'substitute [its] own notions of sound educational policy
for those of the school authorities which [it] review[s][,]'" id.
(alterations in original) (quoting Kerkam, 862 F.2d at 887).
Because Garmany has not shown that the hearing officer erred in
finding that Hamilton was an appropriate placement, the District
is entitled to summary judgment on this ground.

- 15 -

<u>CONCLUSION</u>

Garmany has not shown by a preponderance of the evidence that the hearing officer erred in concluding that DCPS did not fail to implement D.G.'s January IEP and that Hamilton is an appropriate placement for implementing D.G.'s February IEP. Therefore, Garmany's motion for summary judgment will be denied and the District's cross-motion for summary judgment will be granted.  An appropriate Order accompanies this memorandum opinion.

SIGNED this 30th day of March, 2013.


                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge